# Commonwealth *v.* Berkenbush, Appellant.

*Criminal law—Murder—Degrees—Murder of second degree— Presumption—Insanity—Evidence—Charge — Jury to determine degree—Constitutional right of defendant.*

1. On the trial of an indictment for murder, the accused may not plead guilty of murder of the first degree. The law presumes that the offense is murder of the second degree, and the burden is on the Commonwealth to prove that a felonious homicide had been committed, and that there existed in the killing every ingredient or essential element of murder of the first degree.

2. Such burden remains unchanged throughout the entire case —exactly where it stood when the case opened, and so continues until it closes. The burden never shifts. Whenever the evidence is all in, if the Commonwealth has not, on the whole evidence, by whichever side introduced, established beyond a reasonable doubt the guilt of the accused and the degree that it contends for, the accused is entitled to an acquittal or to such verdict as is called for by meeting this burden. The burden on the Commonwealth is not discharged until the jury has solemnly adjudicated these facts.

3. When the trial judge instructs the jury that "they may find a verdict of murder of the first degree, murder of the second degree or manslaughter," he entirely nullifies such instruction by subsequently saying, "If he is not insane, then he is guilty of murder of the first degree."

4. On the trial of an indictment for murder, where the defense is insanity, and the trial judge, without impropriety, tells the jury that the Commonwealth's evidence standing alone, if believed, would be murder of the first degree, he commits reversible error

by further charging as follows: "The defendant, however, sets up that he was not responsible for his actions at the time he killed his wife......If the perpetrator of an offense of this character is insane, the law does not hold him responsible......Now has he satisfied you, by a fair preponderance of the evidence, that, at the time he shot his wife, he did not know what he was doing, or that it was wrong to kill......That is the question you must answer—practically the only question in the case for you to determine. We repeat, the question is, has he satisfied you by a fair preponderance of the evidence in this case that he was insane......There is no evidence in this case of the insanity of the defendant, or any evidence of any peculiar conduct on his part to which any one has testified that would warrant the jury in concluding that the defendant was insane."

5. Such instructions took away from the jury the right to determine all the questions in the case,—whether a crime had been committed, whether the defendant was responsible for its commission, and the degree thereof. The trial judge not only swept away the legislative injunction "that the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree," but went further, and took from defendant the constitutional right, given to every accused person, to have a jury ascertain and pass upon the facts submitted by the Commonwealth, and decide as to his guilt or innocence.

Argued April 19, 1920. Appeal, No. 83, Oct. T., 1920, by defendant, from judgment of O. & T. Cambria Co., June T., 1918, No. 4, on verdict of guilty of murder of the first degree, in case of Commonwealth v. George Berkenbush. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Indictment for murder. Before O'CONNOR, P. J.

Verdict of guilty of murder of the first degree upon which sentence was passed. Defendant appealed.

*Errors assigned* were instructions quoted in part in opinion of Supreme Court.

*John H. McCann,* with him *Percy Allen Rose* and *F. J. Hartmann,* for appellant.—The trial judge erred in

his charge to the jury, when by his instruction he imposed the burden on defendant of reducing the crime from murder in the first degree to a lower degree of homicide: Com. v. Green, 227 Pa. 86; Com. v. Chapler, 228 Pa. 630; Meyers v. Com., 83 Pa. 131; Com. v. Smith, 221 Pa. 552; Com. v. Principatti, 260 Pa. 587.

*D. P. Weimer,* for appellee.

Opinion by Mr. Justice Kephart, May 26, 1920:

The defendant was convicted of murder of the first degree, and here asks the judgment of the court below be set aside because of manifest error committed by the trial judge in instructing the jury. After a brief introduction, noticed later in this opinion, followed by a short statement of the underlying facts in the case, with an opinion based thereon, not objectionable, and a definition or description of the degrees of murder, with a short explanation of the ingredients that enter into the crime of murder of the first degree, the trial judge in instructing the jury said: "The defendant in this case does not deny the killing of his wife; he does not deny that it was done under the circumstances testified to by the witnesses for the Commonwealth; but, on the other hand, admits practically all that the Commonwealth's witnesses have said describing the scene of the crime. There is little conflict of testimony in this case, and, if the Commonwealth's testimony stood alone and were believed, we would have no hesitation in saying to you, gentlemen of the jury, that the highest grade of murder is made out beyond a reasonable doubt in this case." Standing alone there was nothing harmful in this statement. It was a fair expression of the judge's opinion as to the weight of the evidence; it did not take away from the jury any of its functions. The grievous harm follows. The judge continued: "The defendant, however, sets up that he was not responsible for his actions at the time he killed his wife......If the perpetrator of

an offense of this character is insane, the law does not hold him responsible......Did he know it was wrong to kill—in this case, to kill his wife? That is the test. If his mind was in such a state that he was not responsible for his act, applying the tests we have suggested, then the law does not hold him responsible, and does not hold insane people for anything. Now, has he satisfied you, by a fair preponderance of the evidence, that, at the time he shot his wife, he did not know what he was doing, or that it was wrong to kill?" After having told the jury that the Commonwealth's evidence, standing alone, if believed, would be murder of the first degree, followed by a reference to the defense set up, the court proceeds to take away the "if believed" feature of the charge just quoted and makes it in effect a binding direction. The charge continues: "That is the question you must answer—*practically the only question in this case for you to determine.* We repeat, the question is, has he satisfied you by a fair preponderance of the evidence in this case that he was insane?"

There were other questions for the jury to determine of great importance to this defendant. They must find first that a crime had been committed, and that the defendant was responsible for its commission; if so responsible, the degree thereof. The judge had in the first part of his charge clearly left this with the jury to find from the evidence, but, when he told them the only question in the case for them to determine was insanity, he withdrew the other questions from their consideration. The court not only swept away the legislative injunction, "that the jury, before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree," but went further and took from the defendant the constitutional right given to every accused person to have a jury ascertain and pass upon the facts submitted by the Commonwealth and decide as to his guilt or innocence.

To further emphasize his meaning contained in the statements quoted, the judge said: "There is no evidence in this case of the insanity of the defendant, or any evidence of any peculiar conduct on his part to which any one has testified that would warrant the jury in concluding that the defendant was insane." Having told the jury the Commonwealth's evidence, standing alone, if believed, would prove murder of the first degree, and that the defense was insanity, and having withdrawn from the jury the function of ascertaining the existence of a crime, the perpetrator and the degree, the trial judge by the last quotation not only prejudiced defendant's case but thereby eliminated the only matter that stood in the way of a verdict of murder in the first degree by direction of the court.

After narrating the conduct of the husband and wife, concisely reviewing some of the evidence, the learned judge continued: "But if he was not insane, then he is not entitled to an acquittal but is guilty of murder of the first degree, unless you believe from the evidence in the case, or have a reasonable doubt, that he had no specific intent to take life at the time he fired the shots." He had already said to the jury that the facts made out a case of murder of the first degree beyond a reasonable doubt unless the person was insane. He had told them there was no evidence of insanity and had concluded with the instruction, "If he is not insane, then he is guilty of the murder of the first degree, unless you find a specific intent to take life is lacking." What was there left for the jury to pass on?—especially as he immediately followed this last quoted instruction by pointing out that the only excuse defendant offered to take "away the specific intent" is the fact that he was insane, and the judge had already said that there was no evidence in the case showing insanity of the prisoner. This was reinforced by the observation: "In determining what was his intention you must consider his answer to Mrs. Baldwin; he assured Mrs. Baldwin that

he was not crazy, that he knew what he was doing." There was only one verdict the jury could return, and it returned that verdict—murder of the first degree. Of course the trial judge speaks of reasonable doubt later on, but reading that statement in connection with the first—the crime "of murder is made out beyond a reasonable doubt"—and this instruction was meaningless.

In the opening sentences of the charge the jury was instructed: "They could find a verdict of murder of the first degree, murder of the second degree, or manslaughter." His last utterance as to the degree of guilt, "If he is not insane then he is guilty of murder in the first degree," was the last word on the subject that went to the jury on the question of degree; it entirely nullified what the court had said in the opening.

We do not desire to abridge the right of the court in a proper case to express to the jury its opinion on the weight and effect of evidence. It is oftentimes their duty to call to the jury's attention what the sum total of all the evidence would amount to if believed by the jury; but it was beyond the power of the court below to give binding direction to the jury as to the guilt of the accused and the degree of such guilt.

Moreover, the court plainly placed upon defendant the burden of relieving himself of the degree of guilt fixed by the court. By his pronouncement he gave judicial sanction to the facts proved by the Commonwealth and therein conclusively found that such facts would be murder of the first degree unless the defendant, by his own testimony, reduced that degree. The Commonwealth's evidence was given the effect of a conclusive legal adjudication. However much it may be felt at times that such instruction is greatly to be desired and merited in some cases, the humane laws of the Commonwealth—having as their object equality among all who stand before the bar of justice—have decreed that the burden throughout the trial is on the Commonwealth to establish, first, that a felonious homicide has

been committed and that there existed in the killing
every ingredient or essential element of murder in the
first degree. This burden remained unchanged through-
out the entire case—exactly where it stood from the mo-
ment the case opened and so continued until it closed.
The burden never shifted. When the evidence is all in, if
the Commonwealth has not, on the whole evidence, by
whichever side introduced, established beyond a reason-
able doubt the guilt of the accused and the degree that
it contends for, the accused is entitled to an acquittal
or to such verdict as is called for by meeting this bur-
den. The burden on the Commonwealth was not dis-
charged until the jury had solemnly adjudicated the
facts. In the present case the judge took from the jury
their function as tryers and arbiters of fact, and himself
in effect declared defendant guilty of murder in the first
degree. With the defendant's only hope of escape de-
stroyed, the Commonwealth's evidence was surrounded
with absolute inviolability, not by the jury weighing
and considering the evidence, but by direction of the
court.

Under our laws, the accused may not plead guilty of
murder of the first degree. He may plead guilty to mur-
der, but it is incumbent on the court to fix the degree from
testimony produced. If, in the present case, an unlawful
killing was shown to exist to the satisfaction of the
jury, the law's presumption made it murder of the sec-
ond degree. It was still the duty of the Commonwealth
to prove all the essential elements of murder in the first
degree: Commonwealth v. Greene, 227 Pa. 86; Com-
monwealth v. Chapler, 228 Pa. 630; Commonwealth v.
Principatti, 260 Pa. 590; Commonwealth v. Smith,
221 Pa. 552; Commonwealth v. Cunningham, 232 Pa.
609.

The judgment of the court below is reversed and a
venire facias de novo awarded.