# Commonwealth *v.* Johnson, Appellant.

*Criminal law—Murder—Manslaughter—Charge.*

1. Where, on the trial of an indictment for murder, there is nothing in the case of the Commonwealth, nor in the defense set up by the accused, nor in the body of the evidence to suggest manslaughter, the trial judge is not obliged to consider a possible finding to that effect, and may omit the subject from the charge.

2. If he does charge on the subject, and the jury understands that they have the right to bring in a verdict of manslaughter, if they see fit, it is all, if not more, than defendant has the right to ask.

*Criminal law—Murder—Self-defense — Charge — Use of word "persuaded."*

3. A trial judge in a murder trial cannot be charged with error in saying that, before going to the extreme of killing an assailant in self-defense, one must be persuaded that he is in danger of loss of life or great bodily harm, where the charge as a whole shows that the word "persuaded" was used in the sense of "reasonably believe."

*Criminal law—Murder—Attempt to commit robbery — Departure from traditional trial methods—Harmful methods—Appeals —Charge—Guarding rights of defendant—Confessions of accomplices—Assignments of error.*

4. The privilege of an appeal from sentence on a criminal conviction, is not granted to afford the complainant opportunity, by ingenious argument, to magnify mere departures from traditional trial methods into harmful errors.

5. Complaints of the manner in which alleged confessions and the testimony of accomplices, were dealt with at a murder trial, are not a basis for reversal, where the jurors were properly warned that these statements, standing alone, were not items of evidence, which would support a verdict against the accused, and it also appears that the rights of defendant were carefully guarded throughout the trial.

6. Excerpts from a charge are not ground for reversal, where the charge as a whole shows that the jury could not have misunderstood them, and that they could have done the defendant no harm.

7. Excerpts from the charge cannot be treated piecemeal in the assignments of error, without the modifying or amplifying portions.

8. Where the Commonwealth does not claim that the killing was wilful, deliberate or premeditated, or that it occurred in the perpetration or attempt to perpetrate any offense other than robbery, the court may properly charge that the jury may dismiss from their minds all other kinds of first degree murder referred to in the act.

9. Where the Commonwealth charges murder in an attempt to perpetrate a robbery, the court properly charges that an intent to commit the robbery is not enough; as long as the acts are confined to preparation only, they are within the sphere of an intent, and do not amount to an attempt.

Argued October 15, 1923.   Appeal, No. 94, Oct. T., 1923, by defendant, from judgment of O. & T. Allegheny Co., April T., 1922, No. 64, on verdict of murder of the first degree, in case of Commonwealth v. Elmer Johnson.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before CARPENTER, J.

The opinion of the Supreme Court states the facts.

Verdict of murder of the first degree, on which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were various instructions appearing by the opinion of the Supreme Court, quoting record.

*Thomas F. Garrahan,* with him *H. W. McIntosh,* for appellant.—The charge of the court was inadequate and insufficient to safeguard the rights of defendant: Com. v. Cleary, 135 Pa. 64; Meyers v. Com., 83 Pa. 131; Com. v. Green, 227 Pa. 86; Com. v. Smith, 221 Pa. 552; Kelly v. Com., 1 Grant 484; Com. v. Eagan, 190 Pa. 10; Com. v. Colandro, 231 Pa. 343.

The court erred in stating to the jury that the only question involved in the case was as to whether or not defendant committed murder in the perpetration of or attempt to perpetrate a robbery: Com. v. Frucci, 216 Pa. 84.

Opinion of the Court.                    [279 Pa.

*Samuel H. Gardner,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 7, 1924:

Elmer Johnson appeals from a sentence on conviction of first degree murder. The verdict comprehends a finding that the killing was committed in an attempt to perpetrate robbery, and this finding is amply sustained by competent evidence.

On the night of February 2, 1922, defendant, accompanied by two other men, went to the automobile garage of James Krache, in Allegheny County, this State; Johnson's companions remained outside while defendant entered the establishment; he drew a revolver, prepared for the occasion, and discharged it at Krache, wounding him, but probably not fatally; whereupon one of the other men came into the garage and shot Krache in the head; the evidence indicates this latter wound caused his death.

Although not denying the killing took place as stated, defendant,—in the face of previous written confessions, by all three men, tending to show the homicide occurred in an attempt at robbery,—claimed on the trial that the visit to the garage was for a proper purpose. He said Krache started to quarrel with him over a bearing, which he, defendant, was bargaining for; that deceased threw the bearing at him, and advanced toward him with a pistol in hand; then, defendant stated, he fired in "self-defense," and the shot not proving effective, his companion, who, outside, heard the noise of the fracas, came to his rescue and shot Krache in the head. There was no evidence to indicate that Johnson used his pistol because he was controlled by a passion of either anger or fear, nor did he so claim; the answer of accused, plainly stated in his own testimony, was a simple plea of self-defense, or that the homicide was committed not in a passion but because of a conviction on his part that he was in great and imminent danger from deceased,

which conviction, his evidence shows, he wanted the jury to believe was shared by the man who shot Krache in the head.  In short, the defense was a denial of the alleged attempt at robbery and the assertion by defendant that the killing occurred when he and his companion were engaged in repelling an attack commenced by deceased; all the would-be exculpatory evidence was directed toward sustaining this straight plea of self-defense.  There being nothing in the case of the Commonwealth, in the defense set up by accused, or in the body of the evidence to suggest manslaughter, the necessity to consider a possible finding to that effect was eliminated from the trial (see Com. v. Meleskie, 278 Pa. 383).  Nevertheless, the judge gave the standard definition of manslaughter, and several times during his charge mentioned that offense, speaking of the difference between it and murder; while the instructions in this regard are not as clear-cut as might be desired, the jurors no doubt understood they had the right to bring in a verdict of manslaughter, if they saw fit, and this, under the circumstances, was all, if not more than, defendant had the right to ask.

When the charge on the law of self-defense is read as a whole, including the affirmance of certain of appellant's points and the qualification of others, it appears the jury was sufficiently informed as to the controlling principles, and that, by the word "persuaded" (now complained of), the trial judge merely meant that, before going to the extreme of killing an assailant in self-defense, one must be persuaded, in the sense that he must (to use the words of one of defendant's affirmed points) "reasonably believe," that he is in danger of loss of life or great bodily harm; there is no probability the jury understood the instructions in any other sense or that defendant was harmed thereby.

So far as the reasonable-doubt rule is concerned, although the trial judge's instructions were not phrased entirely in previously approved words, this portion of

the charge was fairly within our authorities: see Com. v. Bryson, 276 Pa. 566, 573. It is time to understand that the privilege of having a criminal conviction reviewed is not granted to afford the complainant opportunity, by ingenious argument, to magnify mere departures from traditional trial methods into harmful errors; on the contrary, the purpose of review is to enable the appellate tribunal to see that the accused has been given a fair trial within the law and established rules of practice, and, if material departures in either of these respects, which it is reasonable to believe probably affected the jurors in reaching their decision, are shown to have occurred, then, but not otherwise, to order a new trial. Such departures do not appear on the present record.

We see no merit in the complaints of the manner in which the alleged confessions and the testimony of accomplices were dealt with at the trial. The jurors were properly warned that these statements, standing alone, were not items of evidence which would support a verdict against the accused; yet, since there was testimony that the confessions had been read to, or in the presence of, defendant, and either assented to or not denied by him, they presented matters for consideration in passing on the question of his guilt or innocence,—all of which was sufficiently explained by the trial judge. In this connection it may be well to note that, not only were the prisoner's rights well guarded so far as the admission of the evidence in question was concerned, but no part of the Commonwealth's case was left to rest on either the confession of defendant or those of his alleged confederates; one of the latter appeared in person as a witness for the Commonwealth, and additional testimony, showing circumstances tending to establish the guilt of the accused, was given by several other witnesses. Moreover, the presiding judge's instructions regarding the confessions and testimony of accomplices afforded the triers of the facts every opportunity to say

how much, if any, credit they would give to these state-
ments, the jurors being told more than once that such
proofs should be scrutinized "with great caution," and
disregarded if found unworthy.   The jurors were in-
formed, also, as to the alleged confession of Johnson,—
which he claimed was incorrect and had been secured
from him through improper methods,—that they had
the right "to determine whether or not [it] was free and
voluntary," and, if they decided to the contrary, to
ignore it altogether.   They were further told that, if
they found the confession had been freely made, it was
for them to determine "how much credit to attach to
the whole or any part of it."

Appellant's complaints, concerning the parts of the
charge which deal with the statutory rule that killing
in an attempt at robbery is murder of the first degree,
have no substance when the instructions criticised are
read in connection with the evidence presented by the
prosecution and the defense interposed by the accused.
The trial judge read to the jury the act of assembly
which provides that homicides committed in the per-
petration of, or attempt to perpetrate, certain enumer-
ated offenses constitute murder of the first degree; then
the jurors were told the Commonwealth's theory was
that the present killing occurred in the course of an
attempted robbery, and, therefore, they need not concern
themselves about homicides committed in the perpe-
tration of the other offenses named in the statute.
These instructions are assigned as error, but when the
words employed by the trial judge are given the meaning
which an ordinary man would ascribe to them, it seems
clear they could have done defendant no harm.   The
jurors, in all probability, understood precisely what the
judge meant to convey, namely, that, since the Com-
monwealth was not claiming the killing was wilful,
deliberate, and premeditated, or that it occurred in the
perpetration or attempt to perpetrate any offense other
than robbery, they might, in viewing the evidence pre-

sented by the State, dismiss from their minds all the other kinds of first-degree murder referred to in the act; this was a practically helpful and quite proper instruction.

Appellant further objects that the charge did not make sufficiently plain what the act means by "an attempt to perpetrate a robbery"; but this criticism is not justified by the record. In addition to explaining that, in order to bring the Commonwealth's case within the statute, there must be more than a mere intent to commit robbery, the trial judge affirmed without qualification the following point of defendant: "The burden of proof is upon the Commonwealth to show beyond a reasonable doubt by clear and convincing testimony that the killing was committed in the perpetration of, or an attempt to perpetrate, a robbery; an intent to commit a robbery is not enough,—so long as the acts are confined to preparation only, they are within the sphere of an intent, and do not amount to an attempt." Finally, the jurors were repeatedly informed of the distinction between murder of the first and second degrees, and they were afforded ample opportunity to bring in a verdict of acquittal, or one lower than the first degree, if they entertained a reasonable doubt as to the guilt of defendant or as to a capital offense being established by the evidence in the case.

Most of appellant's assignments complain of detached excerpts from the charge. We recently said (Com. v. Bryson, 276 Pa. 566, 571) that "an instruction cannot properly be separated into parts and these treated piecemeal, but must be viewed as a whole with all its modifying and amplifying portions." When the instructions here questioned, including the answers to defendant's points, are considered as a whole, instead of in isolated sections as appellant would have us do, nothing appears which requires a reversal of the justifiable verdict rendered in this case; nor do the remaining assignments, complaining of rulings on the evidence

and the refusal to withdraw a juror, show reversible error or any matter which calls for further discussion.

The assignments are all overruled, the judgment is affirmed, and the record is remitted to the court below for purpose of execution.